IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CORY PHILLIPS, individually, KHYRAH PHILPOTT, individually, and KHYRAH PHILPOTT and CORY PHILLIPS, as Co-Personal Representatives of the Estate of Cameron Philpott,<br><br>Plaintiff,<br><br>v.<br><br>EVENFLO COMPANY, INC., an Ohio Corporation, AMSAFE, INC., SHIELD RESTRAINT SYSTEMS, INC., WAL-MART STORES, INC., Doe Companies #1-5, Doe Individuals #1-5, & A Joint Venture Consisting of Two or More Defendants (a/k/a Joint Venture Defendants),<br><br>Defendants. | CASE NO. 8:20-CV-03112<br><br><br><br>**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS** |

The Parties agree to the following protocol for the production of discoverable documents originating from hard copy sources and as electronically stored information ("ESI") pursuant to the Federal Rules of Civil Procedure and subject to the parties' Stipulated Protective Order. ("Protocol").

**General Provisions**

1. As used herein, "Requesting Party" means the party requesting production of documents. As used herein, "Producing Party" means the party that may be producing documents in response to the request of Requesting Party. As used herein, the words "Party" or "Parties" include the Requesting Party, the Producing Party or both.

1

2. This Protocol is consistent with the Federal Rules of Civil Procedure and the Court's Local Rules. Nothing in this Protocol shall be deemed to prevent the Parties from agreeing to terms different or inconsistent with the terms of this Protocol.

3. Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

4. The Parties agree that ESI from legacy systems and company phone logs are not necessary to be preserved. All relevant data residing on mobile devices, such as, social media, messaging apps, SMS, MMS, and iMessages, instant messages, photos, videos, voice mails, call logs and contacts shall be preserved and produced if in the possession, custody or control of the named Party.

**Documents from Hard Copy Sources**

5. The Parties will produce relevant and unique documents originating from hard copy sources ("Hard Copy Documents") and attachments in Group IV single page (black and white, 300 dpi) with corresponding searchable OCR text, along with the below-listed metadata fields when available. Such Hard Copy Documents will be produced to Plaintiffs in single page PDF format and to Defendants in single page TIFF format. If a color copy of an original hard copy document is needed in order to understand the document (e.g. the document contains a color-coded graph), or if requested by the Receiving Party, then a color copy will be provided. The Parties will provide a standardized load file compatible with the database of the Requesting Party's preference, as long as such database is one commonly used for hosting electronic documents (i.e. Concordance, Relativity, Ringtail, Insight Predict, Axcelerate, and Summation) and with a Bates number field included in the load file to match text and metadata with PDF images. With respect to Hard Copy Documents, data on the load file will include, if available or if requested by a Receiving Party:

    a. Beginning Document Bates Number

      b.       Ending Document Bates Number
      c.       Beginning Family Bates Number (begins with 1st page of parent)
      d.       Ending Family Bates Number
      e.       Custodian or Source
      f.       Confidentiality Designation
      g.       Page Count
      h.       Redaction (Y/N)
      i.       Text File Path, including filename and extension

### **Electronically Stored Information**

6.      The Producing Party shall conduct a reasonable and good faith search for ESI that is subject to production under the Nebraska Court Rules of Discovery. To filter ESI for relevancy prior to review and production, a Producing Party may: (i) use keyword search terms that it in good faith it believes will capture ESI that is responsive to the Requesting Party's discovery requests and review search term hits for responsiveness and make adjustments accordingly, (ii) determine the ESI custodians that the Producing Party reasonably believes to have documents responsive to an opposing party's document requests; (iii) determine an appropriate date range to search for ESI based on the claims asserted in the above-captioned lawsuit and the discovery requests it receives from an opposing party, and (iv) use technology assisted review technology.

7.      The Producing Party shall disclose to the Requesting Party any search terms it plans to use, the date ranges of its planned ESI searches, the individual custodians it plans to search for ESI (by identifying the name and title of such person), and the custodial locations of where it plans to search for ESI. The Requesting Party may suggest additional ESI search terms, custodians, custodial locations, and date ranges for the Producing Party to search for discoverable ESI. If the Parties disagree upon the search terms, custodians, custodial locations, and date ranges for the Producing Party to search, then they shall meet and confer with each other within fourteen (14) days after such disagreement arises. If the Requesting Party suggests a search term that the Producing Party believes is overbroad, then the Producing Party shall either disclose to the

3

Requesting Party how many document hits such search term(s) are producing or provide examples of the types of false hits that the search generates. Thereafter, the Parties shall meet and confer about whether there are any alternative options to narrow the scope of the search term to reduce fewer hits. If the Parties are unable to reach an agreement on any matters regarding the scope of the Producing Party's ESI searches, then they shall bring those matters before the Court upon motion and notice of hearing.

8. The Parties agree that unless Plaintiffs otherwise specify, Defendants will produce documents to Plaintiffs in either native format or in multi-page PDF format and Plaintiffs will produce documents to Defendants in PDF format. (Defendants agree that Plaintiff does not need to reproduce in TIFF format any documents it has previously produced; however, Defendants reserve the right to ask Plaintiffs to produce any documents that Plaintiff produces going forward in TIFF format if Plaintiff produces a substantial amount of documents to Defendants after the Court enters this Order.) The Parties will produce in native format ESI that does not need redactions and that does not convert well to PDF or TIFF images (e.g. oversized drawings, Excel files, picture files, audio and video files or files containing audio or video files, such as in PowerPoints). In relation to Excel spreadsheets, instead of redacting all non-relevant information, the Producing Party may elect to produce from the Excel spreadsheet just that information that is relevant (e.g. by providing a document that contains just the relevant information contained in the larger Excel file); however, the Producing Party must specifically state in such Excel spreadsheet or otherwise inform the Receiving Party at the time of the production of such Excel spreadsheets that information has been redacted from the said spreadsheets. The Parties may also meet and confer to see whether there are any other reasonable alternative forms for production of these types of materials. The file name for the documents produced in native format will consist of a Bates number and a confidentiality designation, if applicable. The Parties will provide a corresponding placeholder TIFF or PDF image

for native files included in a production. If the Producing Party believes an attachment to an electronically stored document that the Producing Party is producing is irrelevant, then the Producing Party must identify at the time it makes the production of such electronically stored document the fact that it has not produced such attachment(s) with the electronically stored document. The Parties further agree to produce the below-listed metadata fields in Paragraph 10 (a)-(y) when available or if requested by the Receiving Party.

9.  Except as specifically noted herein, all production items will be provided with a standardized delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file containing the metadata fields listed below on the document level to the extent available. The load file must reference each image in the corresponding production and contain a bates number field in the load file to match the text and metadata associated with each produced image or native file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image load files in the production. With respect to ESI, the load file must include the following populated fields, where available:

    a. Beginning Document Bates Number
    b. Ending Document Bates Number
    c. Beginning Family Bates Number (begins with 1st page of parent
    d. Ending Family Bates Number
    e. Custodian or Source
    f. Duplicate Custodians
    g. Confidentiality Designation
    h. Page Count
    i. Redaction (Y/N)
    j. Document Date (if available)
    k. File Name (including extension)
    l. File Extension
    m. Document Type
    n. From
    o. To
    p. CC

      q.      BCC
      r.      Subject
      s.      Email Date Received (UTC time zone)
      t.      Email Time Received (UTC time zone)
      u.      Email Date Sent (UTC time zone)
      v.      Email Time Sent (UTC time zone)
      w.      Text File Name with extension
      x.      Text File Path, including filename and extension
      y.      MD5 Hash Values (or alternatively agreed upon Hash Standard)

10. The Parties may elect to redact: (1) information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (2) information subject to non-disclosure obligations imposed by governmental authorities, law or regulation (e.g. protected personal information); (3) sensitive, non-relevant information, including but not limited to personally identifiable information, trade secrets, or information regarding products, data, or people within documents that contain relevant information. If the Parties redact any such information from any documents or ESI, then those redactions must appear in black in such documents or ESI. By entering this Order, the Court is not stating that it agrees a Producing Party has properly made a redaction to a particular document, rather it is only approving the categories of redactions that can be made. Nothing in this Order shall prevent the Receiving Party from challenging the propriety of the Producing Party's redactions if the Receiving Party believes such redactions are improper, and, if the parties are not able to resolve any differences on whether such redactions were properly made, the Court will decide the matter on proper notice and a hearing.

11. If a Party withholds documents discovered through an ESI search on the basis of privilege, then the Producing Party shall produce a metadata privilege log in either a Microsoft PDF or a Microsoft Excel format indicating the documents withheld from production based on a

privilege claim. To the extent they exist, the metadata fields to be included on the privilege log are: Custodian, File Type, Email Subject, Author, From (email), To (email), CC (email), BCC (email), Email Threading, Document Sent Date (email), Document Created Date, and Document Last Modified Date. If the reason for the privilege is not obvious from the metadata provided (e.g. an attorney sent the email re: a legal matter), then the Party will also provide the basis for the privilege. A Party need not separately log each and every email contained in an email thread, as long as, there is enough information provided on the privilege log to indicate the reason that the thread is privileged. A Party may redact privileged information that may be included in the metadata. A Party need not log withheld privileged documents that involve communications with the Party and its legal counsel created after the filing of the above-captioned litigation. Inadvertent failure to log privileged documents or metadata will not result in the waiver of privilege, provided that within ten (10) days of discovering the inadvertent omission, the Producing Party sends to the Requesting Party an addendum to the appropriate privilege log explaining the reason for the omission and providing the required privilege log entries for the document(s).

12. The Parties will perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values, and will produce only a single copy of identical ESI. Email threading may be used to further reduce the volume of produced ESI. Entire document families may constitute duplicate ESI. De-duplication shall not break up document families. All custodians of a de-duplicated document must be identified in the "Duplicate Custodians" metadata field specified in Paragraph 10 (a)-(y). If the Parties de-duplicate ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information for the duplicate custodians. An overlay data file shall be produced after every rolling production to account for updated duplicate custodian information in the Custodian field.

13. Except as contemplated by paragraph 8 above, the Parties shall preserve parent-child relationships (the association between an attachment and its parent document) where possible. The Parties will provide a Beginning Family Bates Number and Ending Family Bates Number for each produced attachment in the data load file.

14. The Parties shall assign a Bates number to individual pages of TIFF or PDF documents and a Bates number to each document produced in native format. Bates numbers shall be unique across the entire document production and sequential within a given document.

15. The Parties may engage in rolling productions of ESI, if needed, so long as such productions do not delay the Requesting Party's ability to conduct discovery and meet progression order deadlines in this case.

16. If the forms of production allowed by this Protocol present an undue burden or cost for a Producing Party, the Parties shall meet and confer to try to agree on a reasonable, alternative form of production. Nothing in this Protocol prohibits a Party from seeking relief from this Protocol pursuant to applicable discovery rule(s).

17. When ESI and hard copy documents are produced in accordance with this Protocol, the Parties should try to use the image copy of the produced document in any proceeding herein, including depositions, hearings, or trial. Extracted text files shall not be used in any proceeding as a substitute for the image of any document, unless the circumstances warrant it. This paragraph does not apply to any summary exhibits or demonstratives.

18. Each Party will bear the costs to search, process, and review its own ESI and documents according to this Protocol outside the Court finding good cause to order otherwise.

19. Nothing in this Protocol shall be construed to affect, modify or amend any Stipulated Protective Order that the Parties have agreed to and filed with the Court.

20. Nothing in this Protocol shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time in accordance with the applicable discovery rules. In addition, nothing in this Protocol shall alter or limit a Party's ability to contest whether any information that a Producing Party withholds or redacts from its discovery productions in this lawsuit is, in fact, covered by the attorney-client privilege, the work product doctrine, any other privilege or claimed right, or any confidentiality provisions entered by the Court in any Protective Order entered in this lawsuit.

### Production of Databases and Other Structured Data

21. Generally, relevant ESI stored in databases should be produced in a mutually agreeable data exchange format, such as in an Excel document.

22. The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured data source. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable TIFF or PDF (for Defendants) and PDF (for Plaintiffs) or Excel image format. If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable report form.

23. Nothing herein shall obligate a Producing Party to custom reporting. The Parties shall meet and confer to discuss the associated cost and proportionality of any custom reporting.

### Deficiency Procedure

24. Within thirty (30) days following the production of the privilege log, should the Receiving Party believe that the Producing Party's privilege log is deficient in some manner, the

Parties will meet and confer regarding the alleged deficiencies and a reasonable and cost effective way to address the Receiving Party's concerns. One such resolution may be for the Producing Party to provide more detailed information on a sampling of the entries (e.g. ten percent of the entries, or certain categories of entries). The goal of the meet and confer is to find a cost effective solution that does not require judicial intervention or a lot of undue burden in expense and time recreating a privilege log.

### Disposition of Data and Documents

25.     The Parties agree to provide adequate security to protect data provided by the Producing Party or by non-parties. This includes secure data storage systems and established security policies. Paragraph 15 of the Protective Order approved by the Court regarding the Return or Destruction of Documents, is hereby incorporated into this ESI Protocol.

**IT IS SO ORDERED.**

Dated this 2nd day of March, 2021.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge